UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-383-MOC
3:19-cr-179-MOC-DCK-1

| | |
|---|---|
| ANTONIO DEVON WEEKS, | ) |
| | ) |
|         Petitioner, | ) |
| | ) |
| vs. | ) |
| | )      **ORDER** |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|         Respondent. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Petitioner's pro se 28 U.S.C. § 2255 Motion to Vacate Sentence, (Doc. No. 1).

## I.      BACKGROUND

Petitioner was charged in the underlying criminal case with: three counts of distribution and possession with intent to distribute heroin on October 26, November 2, and November 28, 2017, respectively, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts One through Three); and conspiracy to distribute and possess with intent to distribute heroin, and at least one kilogram of a mixture and substance containing a detectable amount of heroin was attributable to and reasonably foreseeable to Petitioner in violation of 18 U.S.C. § 846 (Count Four). (3:19-cr-179 ("CR") Doc. No. 3) (Bill of Indictment).

Petitioner pleaded guilty to Count Four pursuant to a written Plea Agreement in exchange for the Government's dismissal of Counts One through Three. (CR Doc. No. 23). Petitioner admitted that he is, in fact, guilty as charged in Count Four. (CR Doc. No. 23 at 1). The Plea Agreement sets forth Petitioner's sentencing exposure of "a minimum term of 10 years'

1

imprisonment, and a maximum term of life imprisonment…." (CR Doc. No. 23 at 2). The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (Id.).

The parties agreed to jointly recommend the following findings and conclusions regarding the U.S. Sentencing Guidelines: the amount of heroin that was known to or reasonably foreseeable by Petitioner was in excess of one kilogram, but less than three kilograms, resulting in a base offense level of 30; and Petitioner's plea is timely for purposes of acceptance of responsibility, if applicable. (CR Doc. No 23 at 2). The parties remained free to argue their respective positions regarding specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, or adjustments to the offense level. (Id.).

The Petitioner stipulated to the existence of a factual basis to support the guilty plea as set forth in the Factual Basis, which he read and understood. (CR Doc. No. 23 at 3). He agreed that the Factual Basis may be used by the Court, United States Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. (Id.).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. (CR Doc. No. 23 at 4). The Plea Agreement contains an express waiver of Petitioner's right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or

2

prosecutorial misconduct. (CR Doc. No. 23 at 4). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (CR Doc. No. 23 at 5).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> From at least 2016 through at least November 2017, the defendant, **Antonio Devon WEEKS, conspired with [E.C.], [G.T.] and others to distribute heroin** within the Western District of North Carolina.
>
> On October 26, 2017, an undercover agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) purchased approximately **8 grams** of heroin from WEEKS for $600 in a back room of an auto detail shop, the Statesville Ave. Auto Spa….
>
> On November 2, 2017, an ATF undercover agent purchased approximately **14 grams** of heroin from WEEKS for $1,000 in the garage area of the Statesville Ave. Auto Spa.
>
> On November 28, 2017, an ATF undercover agent purchased approximately **14 grams** of heroin from WEEKS for $1,000 in a vehicle located in the parking lot adjacent to the Statesville Ave. Auto Spa.
>
> **During the conspiracy, the amount of heroin that was known or reasonably foreseeable by WEEKS was in excess of one kilogram but less than three kilograms.**

(CR Doc. No. 24 at 1-2) (paragraph numbers omitted; emphasis added).

On September 8, 2020, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. (CR Doc. No. 44) (Acceptance). Petitioner stated, under oath, that he wanted the Court to accept his guilty plea to Count Four. (Doc. No. 44 at 3). He acknowledged that he received a copy of the Indictment and discussed it with his lawyer (CR Doc. No. 44 at 4). The Magistrate Judge read Count Four aloud and informed Petitioner of his sentencing exposure of "not less than 10 years nor more than life

3

imprisonment….” (CR Doc. No. 44 at 5). Petitioner confirmed that he understood the charge he

was pleading to and the maximum penalty that could apply to him.  (Id.). Petitioner agreed that he

had discussed with counsel: how the sentencing guidelines may apply to his case; that the Court

would not be able to determine his sentence until a PSR has been prepared; he may receive a

sentence that is different from that called for by the guidelines; and he will still be bound by the

plea even if he receives a sentence more severe than he expects. (CR Doc. No. 44 at 6-7).  Petitioner

acknowledged the rights he was waiving by pleading guilty and stated his understanding that the

case would proceed directly to sentencing.  (CR Doc. No. 44 at 7-8). The following then transpired:

> THE COURT: Now, we’ve been over the charge contained in count four.  That charge, put simply, is drug conspiracy involving heroin.  Have you talked to Mr. Heroy about that charge?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: **Do you understand the charge**?
>
> THE DEFENDANT: **Yes, sir**.
>
> THE COURT: Are you guilty of that crime?
>
> THE DEFENDANT: Yes, sir.

(CR Doc. No. 44 at 8) (emphasis added).

The Court summarized the Plea Agreement in open court.  (CR Doc. No. 44 at 9-10).

Petitioner agreed that he went over the Plea Agreement carefully with his lawyer and that he

understood and agreed with all its terms including the waiver of his appellate and post-conviction

rights. (CR Doc. No. 44 at 11). Petitioner stated that he discussed the Factual Basis with counsel,

and that he understood and agreed with it. (CR Doc. No. 44 at 12). Petitioner stated that nobody

threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of

leniency or a light sentence other than the terms of the Plea Agreement.  (Id.). Petitioner had

4

enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. (CR Doc. No. 44 at 12-13).

The Presentence Investigation Report's ("PSR") Statement of Relevant Conduct sets forth the facts that were included in the Factual Basis. (CR Doc. No. 30 at ¶¶ 11-17). It further provides:

> In 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating Antonio WEEKS for the distribution of heroin. During the investigation, ATF agents learned that **WEEKS was distributing heroin out of an auto detail shop located at 2317 Statesville Avenue in Charlotte**.
> …
> During the investigation, ATF agents arrested two individuals who were supplied with heroin by WEEKS – [E.C.] and [G.T.].
>
> In March of 2018, agents interviewed [E.C.]. [E.C.] detailed how WEEKS had given him $1,000 for a car when he left prison in August 2015. [E.C.] stated that **WEEKS asked him to rent a storage unit and store a suitcase with a kilogram of heroin in it. Later, [E.C.] began selling heroin for WEEKS**. [E.C.] would sell to customers using a phone WEEKS provided him. [E.C.] had heroin he received from WEEKS upon his arrest in August 2017. [E.C.] also knew of a [G.] as another individual previously selling for WEEKS before the two had a falling out.
>
> In January 2017, [G.T.] was interviewed by law enforcement. **[G.T.] admitted to receiving heroin from WEEKS for the previous 8 months**. [G.T.] said he was receiving **50 grams a week** from WEEKS for sale. He also said that his job was to answer the phone and deliver heroin to **other sellers**. In his statement, [G.T.] said he had a falling out with WEEKS because WEEKS wanted him to make a nighttime deliver. **[G.T.] was aware of an individual he knew as "E" working for WEEKS who was answering calls and making deliveries**.

(CR Doc. No. 30 at ¶¶ 11, 16, 17) (emphasis added).

The PSR includes Petitioner's written statement accepting responsibility as follows:

> I would like to accept responsibility for my actions.
>
> First, I would like to apologize to the Government, my wife and family and also to my community that I let down!
>
> During those last couple months, the error of my life, me and my family went through a real tough time, a situation of great duress. I was embarrassed because at the time I could not provide for them. We were behind on bills and close

5

to eviction. At times we barely had groceries due to the climate wouldn't allow for me to work – customers were not willing to wait in the cold for a handwash.

I tried to find other employment through the cold season, then I found a moving job that was sub contraction jobs out locally. Some money was better than no money at the time. That's when I realized that the choices and decisions made that would not only scare me but cost me my freedom.

With all due respect to human life, I will never use, possess or sell another drug or a controlled substance. Now as I sit back and look at the situation see and know that I made wrong choices. I also let my family down as well as myself!

**I accept responsibility for my actions and for my role, because I know that I was wrong**, and I know in my heart that I could have tried harder to get help the right way for my family as well as for myself. I apologize for my actions. I'm sorry.

(CR Doc. No. 30 at ¶ 23) (emphasis added).

The PSR scored the base offense level as 30 because the offense involved more than one kilogram but less than three kilograms of heroin. (CR Doc. No. 30 at ¶ 25). Two levels were added because Petitioner was an organizer, leader, manager, or supervisor of a criminal activity. (CR Doc. No. 30 at ¶ 28). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. (CR Doc. No. 30 at ¶¶ 32-34). Petitioner had eight criminal history points and a criminal history category of IV. (CR Doc. No. 30 at ¶¶ 48-49). The resulting advisory guidelines range was 121 to 151 months' imprisonment followed by five years of supervised release. (CR Doc. No. 30 at ¶¶ 92, 95).

Counsel filed PSR objections on Petitioner's behalf, including an objection to the two-level role enhancement, arguing that Petitioner only had a buyer-seller relationship with E.C. and G.T. (CR Doc. No. 29).

A sentencing hearing came before the Court on February 16, 2021. Petitioner stated that he recalled the Rule 11 hearing, he told the Court the truth, and he would answer the questions the

6

same way if asked again. (CR Doc. No. 45 at 2-3). Petitioner stated that he pleaded guilty because he committed the offense. (CR Doc. No. 45 at 3). Petitioner admitted that he went over the PSR with his lawyer and understood it. (CR Doc. No. 45 at 5). Counsel abandoned the role objection, noting that the advisory range is 121 to 151 months' imprisonment, and the parties did not object to a sentence at the low end of the guidelines. (CR Doc. No. 45 at 9); see (CR Doc. No. 45 at 11) (the prosecutor noted that Petitioner admitted to a leadership role by withdrawing the objection).

The Court varied from the guideline range by one level, reducing Petitioner's offense level to 28 based on Petitioner's history and characteristics, *i.e.*, a three-year gap in his criminal history, and to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. (CR Doc. No. 45 at 13-15); (CR Doc. No. 46) (Statement of Reasons). The Court found that a sentence at the minimum mandatory of 120 months' imprisonment was "significant" and "appropriate." (CR Doc. No. 45 at 15). The Judgment was entered on February 19, 2021. (CR Doc. No. 37).

Petitioner filed a direct appeal which was voluntarily dismissed on July 13, 2021. (CR Doc. No. 46).

Petitioner filed the instant § 2255 Motion to Vacate on July 22, 2021.[1] (Doc. No. 1). He argues that counsel provided ineffective assistance: prior to his entry of the guilty plea; with regards to the guilty plea which rendered the plea involuntary; and at sentencing.

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence,

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.    DISCUSSION[2]

The Petitioner presently raises a number of claims of ineffective assistance of counsel. He appears to argue: (1) counsel was ineffective pre-plea by: failing to move to dismiss the Indictment because Count Four insufficiently charged conspiracy, failing to adequately investigate the case including drug quantity and the factual basis for Count Four, and failing to challenge the Government's proof of conspiracy; (2) counsel rendered the guilty plea involuntary by: failing to adequately explain the elements of conspiracy and promising Petitioner he would receive a five-year sentence; and (3) counsel was ineffective at sentencing by: failing to call witnesses regarding Petitioner's community service and abandoning the role objection.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions,

---

[2] The Motion to Vacate is lengthy, somewhat repetitive, and confusing. See, e.g., (Doc. No. 1-1 at 9, 12, 25) ("Mr. Heroy should have, based by the factual basis of the case and Counts One, Two and Three of the same indictment has correctly stated charged offenses that accurately run in conjunction with the factual basis provide by the United States in case no. 3:17-cr-179;" counsel failed to "adequately or meaningfully detest the government's uncredible information….;" "The conspiratal information provided in Count Four of the Indictment was nothing more than additional indictment information."). Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order has been considered and rejected.

the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

**(1)     Waiver**

As a preliminary matter, "a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). A knowing and voluntary guilty plea waives any "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal

9

cases." Id.

Petitioner stated at the Rule 11 hearing that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. See (CR Doc. No. 23). He stated that the guilty plea was freely and voluntarily entered and was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. (Id.). He acknowledged that he was guilty of Count Four, and understood and agreed with the Factual Basis. (CR Doc. No. 44 at 12). He further agreed that he had discussed any possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 44 at 12-13). The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991).

Petitioner's knowing and voluntary guilty plea waived any allegations of ineffective assistance of counsel that preceded it, including his suggestion that counsel should have moved to dismiss the Indictment, failed to adequately investigate the drug quantity and other evidence, and failed to challenge the sufficiency of the Government's evidence supporting the conspiracy charge, including the factual basis for the plea. Therefore, to the extent that the Petitioner suggests that counsel provided ineffective assistance before he pleaded guilty, these claims are dismissed and denied.

**(2)      Involuntary Plea**

Petitioner argues that his guilty plea to Count Four was involuntary because: counsel and the Court did not adequately explain the elements of the offense; counsel promised that Petitioner would receive a five-year sentence; and counsel should have instead negotiated a guilty plea to

Counts One through Three, which were supported by the Factual Basis. He contends that he would not have pleaded guilty to Count Four had counsel performed effectively.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters her plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

First, Petitioner contends that counsel and the Court did not adequately explain the elements of the conspiracy charged in Count Four.

A plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Smith v. O'Grady, 312 U.S. 329, 334 (1941). A criminal defendant must understand the "essential elements" of the offense to which he is pleading guilty. Bousley v. United States, 523 U.S. 614, 618-19 (1998). Providing a defendant with a copy of the indictment "give[s] rise to a presumption that the defendant was informed of the nature of the charge against him." Bousley, 523 U.S. at 618. The elements of conspiracy to possess drugs with an intent to distribute are: (1) an agreement among two or more persons to possess drugs with intent to distribute; (2) the

11

defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became part of the conspiracy. United States v. Tillmon, 954 F.3d 628, 640 (4th Cir. 2019).

The Indictment charged conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846 in Count Four as follows:

> From in or about 2016, the exact date being unknown to the Grand Jury, through at least November 2017, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant, ANTONIO DEVON WEEKS, did **knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to distribute a controlled substance**, that is: a mixture and substance containing a detectable amount of heroin; in violation of Title 21 United States Code, Section 841(a)(1).
>
> It is further alleged that, with respect to the conspiracy charged in Count Four, at least one kilogram of a mixture and substance containing a detectable amount of heroin is attributable to and was reasonably foreseeable by ANTONIO DEVON WEEKS. Accordingly, Title 21 United States Code, Section 841(b)(1)(A) is applicable.
>
> All in violation of 21, United States Code, Section 846.

(CR Doc. 3 at 2) (emphasis added).

The Indictment set forth the essential elements of the § 846 conspiracy offense. Petitioner acknowledged at the Rule 11 hearing that he received a copy of the Indictment and discussed it with his lawyer. (CR Doc. No. 44 at 4). This gives rise to a presumption that he understood the essential elements of the offense. Bousley, 523 U.S. at 618. Further, the Court read the charge aloud at the Rule 11 hearing and Petitioner stated that he understood the charge and had discussed it with counsel. (CR Doc. No. 44 at 5). Petitioner's present self-serving assertion that he did not understand the conspiracy charge in Count Four is rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United

States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Second, Petitioner contends that counsel promised he would receive a five-year sentence if he pleaded guilty to Count Four. The Plea Agreement sets forth Petitioner's sentencing exposure of a minimum of 10 years' imprisonment, and a maximum of life. (CR Doc. No. 23 at 2). The Petitioner was informed of the same at the Rule 11 hearing and he stated that he understood. (CR Doc. No. 44 at 5). The Plea Agreement further provides that any estimate of the likely sentence is a prediction rather than a promise and that the Court would have the final discretion to impose any sentence up to the statutory maximum. (CR Doc. No. 23 at 2). Petitioner was informed at the Rule 11 hearing that the minimum penalty for the offense is 10 years and the maximum is life, and he acknowledged that he understood. (CR Doc. No. 44 at 5). Further, the Petitioner agreed that nobody had made him any promises of leniency or a light sentence in exchange for his guilty plea. (CR Doc. No. 44 at 12). Petitioner's present self-serving contention that he thought he would receive a five-year sentence is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Third, Petitioner appears to contend that counsel should have negotiated a plea to Counts One through Three because those counts were reflective of "the true facts of his own criminal misconduct," rather than to Count Four. (Doc. No. 1-11 at 10). This claim is too speculative to support relief. Petitioner has failed to come forward with any evidence that such a plea was forthcoming from the Government, would have been acceptable to the Court, and would have resulted in a lower sentence than the one he received. See, e.g., Berkley v. United States, 2021 WL1238578, at *6 (W.D.N.C. April 2, 2021) (rejecting, as speculative, the claim that effective

13

counsel would have negotiated a more favorable plea agreement).

With regards to prejudice, Petitioner admits that there is a "good chance" he would have been convicted of all four counts at a trial, and that he "likely" would have been convicted of Counts One through Three. (Doc. No. 1-1 at 19-20). He argues that it nevertheless would have been reasonable to proceed to trial because there was only a "slight risk" that he would have been sentenced to more than 120 months' imprisonment. (Doc. No. 1-1 at 20). He appears to argue that the guilty plea prejudiced him because it may result in future sentencing enhancements, will affect his credibility in future cases, and resulted in a special assessment.

None of the foregoing arguments demonstrate prejudice. The Plea Agreement was highly beneficial to Petitioner in that it resulted in the dismissal of three counts of distribution and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), each of which was punishable by up to 20 years' imprisonment, and a three-level deduction for acceptance of responsibility. The decision to go to trial would not have been objectively reasonable in light of the favorable Plea Agreement and the strong evidence of Petitioner's guilt, as demonstrated by the Factual Basis, the PSR's Statement of Relevant Conduct, and Petitioner's own admission that it is likely that a jury would have found him guilty, at a minimum, of Counts One through Three. See United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). A trial thus would have resulted in multiple felony convictions, and their ensuing consequences, and likely would have resulted in a sentence greater than the 120 months he is presently serving. Despite Petitioner's self-

14

serving and incredible contentions that he would have proceeded to trial had counsel performed effectively, he has failed to establish that it would have been objectively reasonable to do so.

Petitioner's contentions that counsel provided ineffective assistance with regards to the plea and that his plea was involuntary are therefore denied.

**(3)**     <u>**Sentencing**</u>

Petitioner contends that counsel performed deficiently with regards to sentencing by failing to challenge the role enhancement and declining to call witnesses on his behalf.

When applying the <u>Strickland</u> prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." <u>Glover v. United States</u>, 531 U.S. 198, 203 (4th Cir. 2001).

Petitioner's claims that counsel provided ineffective assistance with regards to sentencing are too vague and conclusory to support relief. He argues that counsel should not have waived his objection to the role enhancement, but he fails to explain why the enhancement did not apply in light of the Factual Basis and Statement of Relevant Conduct. He further argues that counsel should have called witnesses at the sentencing hearing, who were present and ready to testify about Petitioner's community service. However, he has not identified these witnesses or proffered their testimony. These allegations are therefore insufficient to support relief. <u>See generally</u> <u>United States v. Dyess</u>, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

Moreover, Petitioner has failed to establish prejudice. The Court varied downward by one offense level and sentenced Petitioner to the minimum allowed by statute of 120 months' imprisonment. He cannot to demonstrate that the role objection or witness testimony had a reasonable probability of resulting in a lower sentence under these circumstances. Accordingly,

15

this claim will be dismissed and denied.

## IV.     CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: August 11, 2021

Max O. Cogburn Jr.
United States District Judge

16